UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY ZAMARO,<br><br>        Plaintiff,<br><br>    v.<br><br>G. MOONGA, et al.,<br><br>        Defendants. | Case No.: 1:09-cv-00580-BAM PC<br><br>ORDER GRANTING DEFENDANT MARTINEZ'S MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 81) |

**I.     Introduction**

Plaintiff Sammy Zamaro ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed February 12, 2009, against Defendants Moonga, Akanno and Martinez for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. The parties have consented to the jurisdiction of the United States Magistrate Judge.

Currently before the Court is Defendant Martinez's motion for summary judgment filed on August 3, 2012.[1] Defendants Akanno and Moonga filed a statement of non-opposition to the motion for summary judgment on August 20, 2012. Plaintiff opposed the motion on August 27, 2012, and

---

[1] On August 7, 2012, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 82); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1

Defendant Martinez replied on August 28, 2012.  The motion has been deemed submitted.  Local Rule 230(l).

## II. Defendant's Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to scour the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B. Summary of Complaint

Plaintiff was diagnosed with hepatitis C in 2004. On August 7, 2007, he submitted a health care services request form (CDC 7362 form or sick call slip) via the prison's internal mailing system. Plaintiff complained that he was suffering from serious headaches and loss of appetite. Two to four days later, Defendant G. Moonga, R.N., was making his rounds in Plaintiff's housing unit. Plaintiff told Defendant Moonga that he needed to see a doctor and that he was suffering from excruciating headaches, felt something was seriously wrong and was unable to eat without throwing up. Defendant Moonga stated, "Put in a sick call slip." Plaintiff replied that he did so several days prior. Defendant Moonga replied, "Oh yeah, put in another one." As Defendant Moonga began to walk away from Plaintiff's cell, Plaintiff told Defendant Moonga that he needed medical help now. Defendant Moonga rolled his eyes, shrugged his shoulders and told Plaintiff that he had to wait. Defendant Moonga walked away and did not return.

On August 12, 2007, Plaintiff submitted a second sick call slip. Plaintiff stated that he continued to have serious headaches and lost appetite. No one came to interview Plaintiff regarding the sick call slip. However, Defendant Moonga signed Plaintiff's sick call slip and stated that he interviewed Plaintiff on August 13, 2007. Defendant Moonga did not interview Plaintiff on August 13, 2007.

A few days later, Plaintiff's symptoms and condition grew worse. His pain increased, he began to vomit after attempting to eat or drink anything, and his urine became very dark and bloody.

On August 21, 2007, Plaintiff submitted a third sick call slip stating that his serious headaches and inability to eat continued. Defendant Moonga interviewed Plaintiff on August 22, 2007, regarding the sick call slip. Plaintiff told Defendant Moonga that something was seriously wrong, his headaches

were killing him and he had been vomiting continually for more than a week. Plaintiff also told Defendant Moonga that his urine was very dark and bloody. Defendant Moonga became impatient and ignored Plaintiff's demands to see the doctor. Plaintiff was escorted back to his cell. After Plaintiff returned to his cell, he began to feel very hot and again began to vomit. Plaintiff's pain and suffering worsened.

Between August 23 and August 28, 2007, Plaintiff and his cellmate attempted to call Defendant Moonga. Plaintiff reiterated his pleas for help to Defendant Moonga. He also showed Defendant Moonga as he urinated in a cup so that Defendant Moonga could see how dark and bloody it was. Defendant Moonga nodded his head and walked away. On a second occasion when Defendant Moonga was dispensing medication in Plaintiff's unit, Defendant Moonga purposely ignored Plaintiff's calls.

On August 28, 2007, a different nurse was dispensing medication in Plaintiff's unit. Plaintiff's cellmate signaled the nurse to his cell and helped Plaintiff explain his condition. The nurse indicated that he would be right back to check Plaintiff's vitals. The nurse returned, checked Plaintiff's vitals and returned with a bag of acetaminophen prescribed by Dr. Qamar. The nurse told Plaintiff to take them as needed and that he would be on the doctor's line the next day. Plaintiff took 8-10 acetaminophens that same night.

On August 29, 2007, Plaintiff was barely able to get out of bed. He rolled to the floor to cool his body. Plaintiff was escorted to see Defendant Dr. Akanno that day. Plaintiff told Defendant Akanno that he had submitted several sick call slips over the past 3-4 weeks that went unanswered. Plaintiff also told Defendant Akanno he had been suffering from serious headaches, his whole body was aching in pain, he was vomiting every day for weeks, his body was running from hot to cold, his urine was very dark and bloody and he had not eaten in six days. Defendant Akanno told Plaintiff that he would put him on referral to see the hepatitis c clinic specialist doctor. Plaintiff was placed on the routine waiting list. Defendant Akanno also prescribed medications, including acetaminophen, which aggravates the livers of hepatitis c patients. Plaintiff told Defendant Akanno that the acetaminophen he was already taking was ineffective.

     Plaintiff returned to his cell and ingested three more acetaminophen (Tylenol). Within twenty minutes, Plaintiff began feeling worse and vomited again. Plaintiff took approximately 6-9 more Tylenol that same day and each time he vomited.

     On August 30, 2007, Plaintiff's cellmate told him that he looked like he would die if did not get help. Plaintiff's cellmate called Officer Swansey. Plaintiff was taken to the nurse on duty and explained his condition. Plaintiff pleaded for some medical treatment. The nurse put him on the routine doctor's line.

     Shortly after Plaintiff returned to his cell, Officer Swansey decided that something was wrong with Plaintiff and escorted him to the emergency room clinic/infirmary. While Plaintiff was in a holding cell awaiting transport to the ER clinic/infirmary, he began vomiting convulsively. Once Plaintiff reached the ER clinic/infirmary, he was given IV fluids, along with blood and urine tests. After the IV fluids, Plaintiff felt slightly better, but was sent back to his cell. Within an hour after returning to his cell, Officer Swansey returned and told Plaintiff that he had to go immediately. Upon arriving back at the ER clinic/infirmary, the nurse notified Plaintiff that he was suffering from acute liver failure. Plaintiff was then rushed to Mercy Hospital in Bakersfield.

     While at Mercy Hospital, Plaintiff was given more IV fluids and blood and urine tests were done. Defendant Dr. Martinez examined Plaintiff and prescribed a clear liquid diet. Defendant Martinez also discontinued Plaintiff's Tylenol and ordered other medication to be followed up by prison doctors. Defendant Martinez discharged Plaintiff back to his prison cell.

     After Plaintiff returned to his prison cell, he collapsed unconscious. Plaintiff's cellmate called for help. Plaintiff was placed on a stretcher and returned to Mercy Hospital via ambulance. Plaintiff stayed in the hospital for twenty-one days. During his stay, several tests showed liver failure and a kidney not functioning properly. Further tests confirmed that Plaintiff required surgery. A "J stint" was placed in his kidney on September 4, 2007. After the surgery, further tests showed that his kidney was still not functioning properly and he required another surgery to have his left kidney removed. Surgery was scheduled for October 24, 2007.

     From September 24 through October 24, 2007, while Plaintiff was awaiting surgery, he began to feel ill with more vomiting. On September 25, 2007, Plaintiff saw Defendant Dr. Akanno for a

5

follow-up. Plaintiff informed Defendant Akanno that he was again prescribed Tylenol. Defendant Akanno did not tell Plaintiff to discontinue taking it.

On October 15, 2007, Plaintiff submitted a sick call slip stating that he was still pissing blood. On October 16, 2007, Defendant Moonga came to Plaintiff's cell to interview him. Defendant Moonga told Plaintiff that he was just going to have to wait.

On October 17, 2007, Plaintiff saw Dr. Spaeth, who immediately ordered urine and blood tests. Nothing else was done and Plaintiff remained in pain until October 24, 2007, when he returned to Mercy Hospital for surgery. His urine and blood test confirmed that he had a urinary tract infection that went untreated. Plaintiff remained at Mercy Hospital for seven days after his surgery.

Plaintiff has asserted a claim for deliberate indifference in violation of the Eighth Amendment against Defendants Moonga, Akanno and Martinez.

## C. Statement of Undisputed Material Facts ("UMF")

Issue 1 – Whether Defendant Martinez Was Acting Under Color of State Law

1. Dennis Martinez, M.D., was a member of the Central California Emergency Medicine Physicians medical group on August 30, 2007. (ECF No. 81-5, Declaration of John Eric Fortenberry, M.D. ("Fortenberry Dec.") ¶ 2; ECF No. 81-6, Declaration of Dennis Martinez, M.D. ("Martinez Dec.") ¶ 2.)
2. Dr. Martinez is not currently, nor has he ever been, an employee of the State of California or any other state entity. (Martinez Dec. ¶ 2.)
3. Central California Emergency Medicine Physicians held a contract during the August of 2007 time frame with Catholic Healthcare West to provide Emergency Medicine physician services to various health care facilities owned and operated by Catholic Healthcare West in the Kern County area, including Mercy Hospital on Truxtun Avenue in Bakersfield, California, which is where Dr. Martinez had his sole interaction with Plaintiff on August 30, 2007. (Id. at ¶ 3; Fortenberry Dec. ¶ 3.)
4. When Dr. Martinez saw Plaintiff on August 30, 2007 in the Emergency Room of Mercy Hospital and provided care and treatment to him, he did so not because of any specific contract that Central California Emergency Medicine Physicians had with the California

6

Department of Corrections (or any other state entity) to provide care and treatment to inmates. (Martinez Dec. ¶ 4.)

5. Central California Emergency Medicine Physicians did not have any written contracts with the California Department of Corrections or any other state entity in August of 2007 to provide care and treatment to inmates who were transported to Emergency Rooms where Central California Emergency Medicine Physicians provided staffing. (Id. at ¶ 5; Fortenberry Dec. ¶5.)

6. Dr. Martinez's role as an Emergency Medicine physician is to treat any patient that is brought back to the Emergency Room regardless of their status (private citizen versus inmate) and regardless of their ability to pay for health care services provided to them in the Emergency Room. (Martinez Dec. ¶ 4.)

7. Dr. Martinez had no choice as to whether or not to accept Plaintiff as a patient on August 30, 2007 or whether or not to provide care and treatment to him. (Id.)

8. When Dr. Martinez provided care and treatment to Plaintiff on August 30, 2007 at the Emergency Room of Mercy Hospital in Bakersfield, California, he did not take any recommendations or suggestions for treatment methods from Plaintiff's correctional chaperone nor did he consider their input in his medical decision making process. (Id. at ¶ 6.)

9. Even if Plaintiff's correctional chaperones had requested input in the treatment of Plaintiff—which they did not—such individuals do not have the right to control or guide Dr. Martinez's treatment decisions. (Id. at ¶ 6.)

10. As a physician, Dr. Martinez is called to exercise his independent medical judgment about the best and most effective method to provide care and treatment for any individual patient given their presenting symptoms, which he did for Plaintiff on August 30, 2007 when he saw him at the Mercy Hospital Emergency Room. (Id. at ¶ 6.)

11. The corrections chaperone did not guide or dictate Dr. Martinez's course of medical treatment given to Plaintiff. (Id. at ¶ 6.)

///

Issue 2 – Whether Defendant Martinez Was Deliberately Indifferent

12. Plaintiff initially presented to the Mercy Hospital Emergency Room on August 30, 2007, where he was evaluated and treated by Dennis Martinez, M.D.[2]  (ECF No. 81-3, Declaration of Michael H. Forman, M.D. ("Forman Dec.") ¶ 5.a.)

13. Upon his initial presentation, Plaintiff reported a past history of chronic Hepatitis C and denied fever, chills, cough, congestion, chest pain, shortness of breath, melena, hematemesis, hematochezia, abdominal pain, dizziness, lightheadedness, syncope, falls, trauma, or seizure activity.[3]  (Id.)

14. On August 30, 2007, when initially seen by Dr. Martinez, Plaintiff complained of nausea and vomiting from that morning with two specific episodes of emesis but felt markedly improved upon arrival to the Emergency Department with no pain.  (Id.)

15. Dr. Martinez conducted a physical examination of Plaintiff on August 30, 2007.  (Id. at 5.b.)

16. Plaintiff's vital signs were within normal limits, and his eyes, neck, respiratory, cardiovascular, neurologic, musculoskeletal, and gastrointestinal systems upon physical examination were normal as was his psychiatric affect.[4]  (Id.)

17. In conjunction with his treatment of Plaintiff on August 30, 2007, Dr. Martinez ordered and reviewed various lab studies and results.  (Id. at ¶ 5.c.)

18. Plaintiff's lab results revealed an ammonia level of 25, a total bilirubin of 9.1, alkaline phosphatase of 137 and elevated liver enzyme levels (ALT of 6,270 and AST of 5,000) consistent with a patient who had Hepatitis C.  (Id. at ¶ 5.c.)

---

[2] Plaintiff attempts to raise a dispute by denying that he was properly treated.  However, this statement of fact relates solely to whether or not Defendant Martinez treated Plaintiff on August 30, 2007, not the propriety of that treatment.

[3] Plaintiff agrees with this statement of fact, but contends that Defendant Martinez also was aware that Plaintiff had not eaten, was vomiting and unable to hold any food down.  As Plaintiff does not disagree, he has not raised a genuine dispute of material fact.  Further, Defendant's cited evidence includes recognition that "Plaintiff complained of nausea and vomiting from that morning with two specific episodes of emesis."  (ECF No. 81-3, Forman Dec. ¶ 5.a.)

[4] Plaintiff attempts to raise a factual dispute by citing his return to the Emergency Room and subsequent hospitalization for issues related to his left kidney function.  However, the disputed fact at issue relates solely to Dr. Martinez's findings on physical examination.  Plaintiff has not provided competent evidence to dispute Dr. Martinez's findings.

19. Dr. Martinez's ultimate diagnosis for Plaintiff in the Emergency Room on August 30, 2007 was that he was suffering from Hepatitis C.  (Id. at ¶ 5.d.)

20. In terms of plan of care and treatment, Dr. Martinez administered IV fluids to Plaintiff while in the Emergency Room and after such administration, Dr. Martinez discharged Plaintiff back to the custody of the California Correctional System with orders to discontinue acetaminophen (Tylenol) usage, start a clear liquid diet, return to the Emergency Room if he experienced worsening symptoms, and follow-up with his primary care physician.  (Id. at ¶ 5.e.)

21. Plaintiff appears to have returned to the Mercy Hospital Emergency Room just 12 hours later in the early morning of August 31, 2007 where he was evaluated by Jeffrey Marino, M.D. and hospitalized electively after it was noted, as an incidental findings, that Plaintiff had a dimorphic left kidney exhibiting end-stage hydronephrosis.[5]  (Id. at ¶ 5.f.)

22. The actual admission by Dr. Marino was devoted to evaluating the abnormal left kidney finding that was of long-standing duration.[6]  (Id. at ¶ 5.f.)

23. Plaintiff was discharged back to corrections custody on September 21, 2007 following double-J stent placement on September 4, 2007 to relieve hydronephrosis seen in his left kidney on imaging studies, and was scheduled to return in October for a possible left nephrectomy given the minimal function seen in his left kidney, which he ultimately had performed on October 24, 2007.  (Id. at ¶ 5.f.)

24. There was no specific treatment given or required during Plaintiff's hospitalization from August 31, 2007 to September 21, 2007 for his Hepatitis C condition.[7]  (Id. at ¶ 5.f.)

---

[5] Plaintiff agrees that he returned to the hospital, but contends that he was hospitalized for acute hepatitis. According to medical records, Plaintiff's admission diagnosis on August 31, 2007, was initially acute hepatitis, but subsequently changed for a nephrosis evaluation related to his left kidney. (ECF No. 81-4, Ex. B. to Forman Dec. p. 11.)

[6] Plaintiff again disagrees, arguing that he was admitted for acute hepatitis. Plaintiff cites his supporting Exhibit B, which are reports completed by Drs. Marino and Shiue. (ECF No. 86, Ex. B pp. 19-22.) Dr. Marino's report indicates that Plaintiff complained of chest pain and assessed with chest pain, rule out acute coronary syndrome, acute hepatitis and pyrexia. (Id. at pp. 19-20.) Dr. Shiue's report indicates that the reason for Plaintiff's admission was acute hepatitis. (Id. at p. 21.) However, Plaintiff's admission diagnosis was later changed for a nephrosis evaluation. (ECF No. 81-4, Ex. B. to Forman Dec. p. 11.)

[7] Plaintiff disagrees, claiming that he was readmitted for acute hepatitis on August 31, 2007. The cited evidence indicates that Plaintiff returned to the hospital for complaints of chest pain. (ECF No. 81-4, Ex. B to Forman Dec. pp. 6-7.)

25. Dr. Martinez met the standard of care on August 30, 2007 when he evaluated Plaintiff, conducted a physical examination on him, and ordered lab tests and reviewed the results.[8] (Id. at ¶ 6.a.)

26. The standard of care applicable to Emergency Medicine Physicians was met by Dr. Martinez on August 30, 2007 when he provided IV hydration to Plaintiff, who was mildly dehydrated upon presentation.[9] (Id. at ¶ 6.b.)

27. The administration of IV fluids for a patient who is mildly dehydrated is a reasonable manner for treating such a condition in the Emergency Room setting.[10] (Id. at ¶ 6.b.)

28. Dr. Martinez was not required by the standard of care applicable to Emergency Medicine physicians to hospitalize Plaintiff on August 30, 2007.[11] (Id. at ¶ 6.b.)

29. A patient like Plaintiff who presents with elevated liver enzyme levels and/or a Hepatitis C condition is not required to be admitted to a hospital for evaluation and monitoring unless that patient is severely dehydrated and cannot ultimately keep down fluids or has some other concurrent serious acute medical issue.[12] (Id. at ¶ 6.c.)

---

Based on the evidence, Plaintiff presented to the hospital with elevation of his cardiac enzymes and was noted to have Hepatitis C exacerbation. Plaintiff's diagnosis was subsequently changed from acute hepatitis to allow for nephrosis evaluation, and he remained hospitalized to allow for Double-J placement and left kidney evaluation. (ECF No. 81-4, Ex. B to Forman Dec. p. 11.) Plaintiff has not presented competent medical evidence or expert testimony indicating that he received any form of treatment for his Hepatitis C during this hospitalization period.

[8] Plaintiff disagrees and argues that the proper care and treatment was the treatment provided by Dr. Marino and Dr. Shiue just twelve hours later. Plaintiff reports that he was sent to the Emergency Room because his situation was not within the scope of KVSP. Plaintiff cites his supporting Exhibit D. (ECF No. 86, Ex. D.) However, this exhibit does not identify the relevant standard of care or raise a dispute of material fact. Instead, Exhibit D indicates that Plaintiff required a higher level of care due to acute liver disease with possible liver failure than could be provided within the scope of KVSP. It does not provide competent evidence related to the care and treatment rendered by Defendant Martinez.

[9] Plaintiff disagrees and argues that the standard of care was met by Dr. Marino and Dr. Shiue. Plaintiff does not present expert testimony to establish the standard of care or to raise a genuine dispute of material fact.

[10] Plaintiff agrees, but contends that he was not mildly dehydrated. The Court has not identified any treatment notes specifically indicating that Plaintiff was mildly dehydrated upon presentation. However, Plaintiff has admitted, and the evidence supports, that Plaintiff had been vomiting on the morning of August 30, 2007, with two specific episodes of emesis.

[11] Plaintiff disagrees and argues that there was no question that he needed to be hospitalized because he subsequently spent twenty-one days in the hospital. Although Plaintiff correctly notes that he was subsequently hospitalized, the evidence reflects that Plaintiff's hospital stay resulted from a kidney condition, which was not the condition he was treated for by Defendant Martinez. (ECF No. 81-4, Ex. B to Forman Dec. p. 11.)

[12] Plaintiff disagrees because he returned the hospital twelve hours later and was admitted, in part, because of his elevated liver enzymes and acute hepatitis. As noted previously, Plaintiff's admission diagnosis was changed to allow for nephrosis evaluation, not Hepatitis C treatment.

30. Plaintiff was not exhibiting any signs or symptoms that would require hospitalization on August 30, 2007 when seen by Dr. Martinez.[13]  (Id. at ¶ 6.c.)

31. The correct method of treatment for a patient with Hepatitis C and the symptoms shown by Plaintiff is typically outpatient.[14]  (Id. at ¶ 6.d.)

32. The goal of an Emergency Department evaluation is to confirm that the patient is not severely dehydrated, to provide IV hydration for lesser degrees of dehydration, and give instructions to return to the emergency Department if unable keep down fluids after discharge.[15]  (Id. at ¶ 6.d.)

33. The standard of care applicable to Emergency Medicine physician was met by Dr. Martinez when he diagnosed the patient as suffering from Hepatitis C when he presented for treatment at the Mercy Hospital Emergency Room on August 30, 2007.[16]  (Id. at ¶ 6.d.)

34. There are no specific medications that a physician such as Dr. Martinez would give a patient who presented with similar conditions to Plaintiff to help resolve a chronic Hepatitis C condition that was exacerbated by short-term excessive acetaminophen usage leading to elevated liver enzymes.[17]  (Id. at ¶ 6.f.)

---

[13] Plaintiff disagrees and contends that he was hospitalized twelve hours later based on the same symptoms. However, the evidence reflects that Plaintiff returned to Mercy Hospital for complaints of chest pain, which he had previously denied upon presentation to Defendant Martinez.  (ECF No. 86, Ex. B p. 19-20; ECF No. 81-4, Ex. B to Forman Dec. p. 8.)

[14] Plaintiff disagrees because his symptoms were not within the scope of the KVSP.  (ECF No. 86 Ex. D p. 26. Plaintiff's evidence does not provide evidence regarding the correct method of treatment.

[15] Plaintiff agrees, but claims that he was not mildly dehydrated and that his condition required hospitalization.  For the reasons discussed regarding Plaintiff's dehydration and subsequent hospitalization, the Court does not find that Plaintiff has created a genuine dispute of material fact.

[16] Plaintiff disagrees, arguing that his condition required hospitalization and treatment.  However, Plaintiff has not provided competent evidence or medical expert testimony to raise a genuine dispute of material fact regarding whether Defendant Martinez met the relevant standard of care.  Meeting the standard of care is a way to show Defendant was not deliberately indifferent.  As discussed, Plaintiff's subsequent hospitalization was for nephrosis evaluation and Double -J placement.  (ECF No. 81-4, Ex. B to Forman Dec. p. 11.)

[17] Although Plaintiff disagrees, he has not presented competent medical evidence or medical expert testimony to identify any specific medications that would be provided to resolve a chronic Hepatitis C condition exacerbated by short-term excessive acetaminophen usage.

35. The only specific treatment in this situation is to stop the acetaminophen usage, which would allow the liver enzymes to return to their baseline levels, which is exactly what Dr. Martinez did.[18] (Id. at ¶ 6.f.)

36. The fact that Plaintiff had elevated liver enzyme levels upon presentation on August 30, 2007 did not mean that he was suffering from an emergency or life threatening situation.[19] (Id. at ¶ 6.g.)

37. The mere presence of elevated liver enzymes does not, under the standard of care applicable to Emergency Medicine physicians, require that a patient be hospitalized.[20] (Id. at ¶ 6.g.)

38. Dr. Martinez's care and treatment of Plaintiff on August 30, 2007 met the standard of care applicable to Emergency Medicine physicians in all respects.[21] (Id. at ¶ 6.h.)

39. It cannot be said, to a reasonable degree of medical certainty, that Dr. Martinez was in any way deliberately indifferent to Plaintiff's medical status when he treated Plaintiff on August 30, 2007.[22] (Id. at ¶ 6.i.)

40. Dr. Martinez provided the correct treatment to Plaintiff given his presenting symptoms and met the standard of care applicable to Emergency Medicine physicians.[23] (Id. at 6.i.)

---

[18] Although Plaintiff disagrees, he has not presented any expert testimony to raise a genuine dispute of material fact. To the extent that Plaintiff attempts to raise a dispute based on his subsequent admission, this is not sufficient. Plaintiff's admission diagnosis was changed and he remained hospitalized for a nephrosis evaluation and Double-J placement. (ECF No. 81-4, Ex. B to Forman Dec. p. 11.) Further, Plaintiff must show that what Dr. Martinez did or did not do was deliberately indifferent.

[19] Plaintiff disagrees based on his subsequent hospitalization. As discussed, this is not sufficient.

[20] Although Plaintiff disagrees, he has not presented any medical expert testimony to create a genuine dispute regarding the standard of care.

[21] Although Plaintiff disagrees, he has not presented any medical expert testimony to create a genuine dispute of material fact regarding the standard of care and whether Defendant Martinez met the applicable standard. Again, meeting the standard of care is a way to show Defendant was not deliberately indifferent.

[22] Plaintiff disputes this fact by reference to his complaint and his argument that Defendant's expert, Dr. Forman, is unfamiliar with the events of August 30, August 31, and September 21, 2007. Plaintiff's complaint is not sufficient as it does not provide competent medical evidence or medical expert testimony. Plaintiff's argument that Dr. Forman is not familiar with the events at Mercy Hospital also is unsupported. Dr. Forman has declared under penalty of perjury that he reviewed Plaintiff's "entire medical chart from Mercy Hospital (volumes one through three) in addition to the deposition transcript of testimony offered by [Plaintiff] on Friday, June 22, 2012." (ECF No. 81-3, Forman Dec. ¶ 3.)

[23] Although Plaintiff disagrees, he has not presented any medical expert testimony to create a genuine dispute of material fact regarding the appropriateness of Defendant Martinez's treatment or whether he met the applicable standard of care.

12

41. Plaintiff had a difference of opinion with Dr. Martinez about the care and treatment he received on August 30, 2007. (Plaintiff's Deposition pp. 89:20-90:2.)

<u>Issue 3 – Whether any Action or Omission by Defendant Martinez Caused Harm to Plaintiff</u>

42. As Dr. Martinez acted reasonably and met the standard of care in all aspects of his care and treatment of Plaintiff, it can be stated to a reasonable degree of medical certainty and is supported by the evidence in this case to conclude that there was nothing Dr. Martinez either did or did not do that played any role in causing any harm whatsoever to Plaintiff.[24] (ECF No. 81-3, Forman Dec. ¶ 7.)

43. Nothing that Dr. Martinez either did or did not do played any causal role in Plaintiff's return to the Emergency Room on August 31, 2007 where he was evaluated by Dr. Marino and subsequently admitted to the hospital for evaluation and treatment of a previously undetected chronic condition involving his left kidney.[25] (Id.)

44. Nothing that Dr. Martinez either did or did not do caused Plaintiff to later undergo double-J stent placement on September 4, 2007 to treat his left hydronephrosis condition.[26] (Id. at ¶ 8.)

45. Nothing that Dr. Martinez either did or did not do caused Plaintiff to undergo a left nephrectomy on October 24, 2007, which was caused by a longstanding, chronic kidney condition that is the type of problem that would occur gradually over a period of many years, and one that was fortuitously discovery during his second Emergency Department presentation.[27] (Id.)

**D. Discussion**

Defendant Martinez contends he is entitled to summary judgment because (1) he was not acting under the color of state law; (2) his care and treatment of Plaintiff on August 30, 2007 met the standard of applicable care; and (3) nothing he did or did not do caused any harm or injury to Plaintiff.

---

[24] Plaintiff disagrees based on his subsequent hospitalization, but has not provided any expert medical testimony to raise a genuine dispute of material fact.
[25] Plaintiff disagrees, but has not presented any expert medical testimony to raise a genuine dispute
[26] Plaintiff disagrees, but has not presented any expert medical testimony to raise a genuine dispute.
[27] Although Plaintiff disagrees, he has not presented any expert medical testimony to raise a genuine dispute.

1. Color of State Law

Defendant Martinez argues that he was not acting under color of state law when he provided treatment to Plaintiff on August 30, 2007.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988) (citations omitted). The presumption is that "conduct by private actors is not state action," Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011), cert. denied, 132 S.Ct. 1000 (2012), but "'state action may be found if . . . there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself,'" Florer, 639 F.3d at 924 (quoting Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295, 121 S.Ct. 924 (2001)). Private parties may be sued under § 1983 only if their conduct is "fairly attributable to the State" and there was an agreement between the state and the private party to deprive plaintiff's constitutional rights. Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-37, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.1989) (citations omitted). The United States Supreme Court has determined that a private physician who contracts with the state to provide medical care to inmates at a prison hospital acts under color of state law for purposes of section 1983. West, 487 U.S. at 56.

Here, unlike in West, Defendant Martinez was not contracted with the state to provide medical care to inmates. Rather, Defendant Martinez has presented undisputed evidence that he was member of the Central California Emergency Medicine Physicians medical group on August 30, 2007, and that this medical group did not have a contract with the California Department of Corrections or any other state entity to provide care and treatment to inmates who were transported to Emergency Rooms where the Central California Emergency Medicine Physicians medical group provided staffing. (UMF Nos. 1-2, 4-5.)

The Court rejects Plaintiff's counter argument that Defendant Martinez acted under color of state law because of an alleged contract between Mercy Hospital and the state to provide treatment to

14

1  inmates. Plaintiff has not provided any evidence of a contract or agreement beyond conclusory
2  assertions based solely on his observation of other inmates receiving treatment at the hospital and the
3  presence of correctional officers. (ECF No. 87 pp. 57-58, Declaration of Plaintiff ¶¶ 2-11.) Plaintiff
4  also has not provided any evidence indicating that Defendant Martinez was aware of any contract
5  between Mercy Hospital and the state, that Defendant Martinez became a party to any such contract or
6  that Defendant Martinez provided regular medical treatment to Plaintiff or any other inmates.
7  Additionally, Plaintiff has not presented any evidence that there is a "close nexus" between Dr.
8  Martinez and the state. The undisputed evidence reflects that Defendant Martinez's care and treatment
9  on August 30, 2007, was not guided, directed or dictated by correctional personnel. (UMF Nos. 8-16.)
10 And, there is no historical evidence of a nexus between Dr. Martinez and the state. Rather, the
11 evidence demonstrates an isolated contact between a privately practicing physician and an inmate
12 brought in for urgent, non-routine care. These facts are insufficient to establish "color of law."
13         Accordingly, the Court concludes that Defendant Martinez was not acting under color of state
14 law when he provided emergency room treatment to Plaintiff on August 30, 2007. See Jackson v.
15 Federal Correctional Inst., 2013 WL 1651859, *4 (E.D. Cal. Apr. 16, 2013) (prisoner failed to state
16 cognizable claim in Bivens action against private hospital for failing to come within the color of state
17 law; noting Ninth Circuit has consistently dismissed private hospitals and doctors in section 1983
18 claims for failing to come within the color of state law); but see Estate of Prasad ex rel. Prasad v.
19 County of Sutter, ---F.Supp.2d ---, 2013 WL 3941096 (E.D. Cal. Jul. 30, 2013) (finding that private
20 physician acted under color of state law where his hospital-employer was under a contract with state
21 prison authorities and physician acted as agent of hospital). Defendant Martinez therefore is entitled
22 to summary judgment on Plaintiff's section 1983 claim against him.
23         2.  Eighth Amendment - Deliberate Indifference
24         Even assuming, arguendo, that Defendant Martinez was acting under color of state law, the
25 Court finds that summary judgment is appropriate because there is no evidence that Defendant
26 Martinez violated Plaintiff's Eighth Amendment rights.
27         A prisoner's claim of inadequate medical care does not constitute cruel and unusual
28 punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

1  "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)
2  (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two part test for deliberate indifference
3  requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a
4  prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction
5  of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at
6  1096.  A defendant does not act in a deliberately indifferent manner unless the defendant "knows of
7  and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837
8  (1994).  "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d
9  1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown
10 where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need"
11 and the indifference caused harm, Jett, 439 F.3d at 1096.

12 In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's
13 civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere
14 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."
15 Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-
16 06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition
17 does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical
18 malpractice does not become a constitutional violation merely because the victim is a prisoner."
19 Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).
20 Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See
21 Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere
22 disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez
23 v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

24 As an initial matter, Plaintiff's disagreement with the care and treatment rendered by
25 Defendant Martinez does not give rise to an Eighth Amendment violation.  Sanchez, 891 F.2d at 242.
26 In order to establish that a difference of opinion amounted to deliberate indifference, a prisoner must
27 show that the defendant's chosen course of treatment was medically unacceptable and in conscious
28

disregard of an excessive risk to the prisoner's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996).

In this case, Defendant's expert evidence demonstrates that Defendant Martinez evaluated and treated Plaintiff in the Mercy Hospital Emergency Room on August 30, 2007. (UMF No. 12.) Upon his initial presentation, Plaintiff reported a past history of chronic Hepatitis C, but denied fever, chills, cough, congestion, chest pain, shortness of breath, melena, hematemesis, hematochezia, abdominal pain, dizziness, lightheadedness, syncope, falls, trauma, or seizure activity. (UMF No. 13.) Plaintiff also reported nausea and vomiting that morning with two specific episodes of emesis. (UMF No. 14.) Dr. Martinez conducted a physical examination and found that Plaintiff's vital signs were within normal limits, and his eyes, neck, respiratory, cardiovascular, neurologic, musculoskeletal, and gastrointestinal systems were normal. (UMF Nos. 15, 16.) Dr. Martinez also ordered and reviewed various lab studies and results. (UMF No. 17.) Based on the lab results, Defendant Martinez determined that Plaintiff was suffering from Hepatitis C. Defendant Martinez administered IV fluids and subsequently discharged Plaintiff with orders to discontinue Tylenol, start a clear diet and return if he experienced worsening symptoms. (UMF Nos. 18-20.) The expert evidence further demonstrates that Defendant Martinez met the standard of care when he evaluated Plaintiff, conducted a physical examination, ordered lab tests and provided IV hydration. (UMF No. 25-26.)

Plaintiff has presented no competent medical evidence or expert testimony to demonstrate that Defendant Martinez's chosen course of treatment was medically unacceptable and in conscious disregard of an excessive risk to his health. Jackson, 90 F.3d at 332. Plaintiff's own conclusory allegations are insufficient to avoid summary judgment. See Clouthier v. County of Contra Costa, 591 F.3d. 1232, 1252 (9th Cir. 2010).

Plaintiff attempts to raise a genuine dispute of material fact that Defendant Martinez was deliberately indifferent and failed to meet the requisite standard of care by citing his return to the emergency room twelve hours later and his subsequent hospitalization and treatment from August 31, 2007 to September 21, 2007. In support of his contentions, Plaintiff cites medical reports completed by Dr. Jeffrey Marino and Dr. Shyi-Tang Shiue. (ECF No. 86, Ex. B pp. 19-22.) According to these reports, Plaintiff returned to the Emergency Room at Mercy Hospital on August 30, 2007, and was

1  seen by Dr. Marino. Dr. Marino recounted that Plaintiff had been feeling poorly, was having episodes
2  of nausea and vomiting, was sent to the Emergency Room and was found to have acute hepatitis. He
3  was returned to the prison, complained of chest pain and a near-syncopal event and was sent back to
4  the hospital. Dr. Marino identified Plaintiff's current chief complaint as "chest pain," worse after he
5  vomited. (Id. at p. 19.) Dr. Marino administered a dose of Lavequin to cover for possible spontaneous
6  bacterial peritonitis and Plaintiff received Toradol. Dr. Marino assessed Plaintiff with (1) chest pain,
7  rule out acute coronary syndrome, (2) acute hepatitis and (3) pyrexia. (Id. at pp. 19-20.) Plaintiff was
8  admitted to the hospital. (Id.)

9        On August 31, 2007, Dr. Shiue evaluated Plaintiff and noted that he was admitted for acute
10 hepatitis. Dr. Shiue diagnosed Plaintiff with possible acute hepatitis and administered IV fluids with
11 nutritional support. (Id. at p. 21.) However, Dr. Shiue later reported that Plaintiff's diagnosis was
12 changed for a nephrosis evaluation. (ECF No. 81-4, Ex. B to Forman Dec. p. 11.)

13       Although Plaintiff has presented evidence that he was initially readmitted for acute Hepatitis C,
14 he has failed to present any evidence suggesting that his return and readmission to the hospital was
15 due to the precise symptoms as those treated by Defendant Martinez or the result of any treatment that
16 he did or did not receive from Defendant Martinez. Rather, Plaintiff's own evidence reflects that
17 Plaintiff returned to the hospital due to chest pain and a near syncopal episode, and when he presented
18 to Dr. Marino in the Emergency Room, Plaintiff chiefly complained of chest pain. (ECF No. 86, Ex.
19 B pp. 19-20.) In contrast, the undisputed evidence reflects that Plaintiff did not report chest pain to
20 Defendant Martinez on his initial visit to the Emergency Room on August 30, 2007. (UMF No. 13.)
21 Plaintiff has not presented competent medical evidence to indicate that the chest pain resulted from or
22 was caused by acute hepatitis or that Defendant Martinez should have provided treatment for an
23 unreported symptom. Indeed, Dr. Martinez treated Plaintiff. Dr. Martinez examined Plaintiff, ordered
24 and evaluated the tests, and prescribed medication and a course of action. Plaintiff has failed to raise a
25 triable issue of fact from which a reasonable jury could conclude this treatment was deliberately
26 indifferent.

27       Plaintiff argues that he should have been admitted to the hospital by Defendant Martinez for
28 treatment of his Hepatitis C. However, according to the undisputed medical expert evidence, Plaintiff

18

was not exhibiting any signs or symptoms that would have required his hospitalization on August 30, 2007, when he was seen by Defendant Martinez. (UMF No. 30.) Further, Plaintiff's subsequent hospitalization from August 31 to September 21, 2007, was for the purpose of a nephrosis evaluation related to his left kidney, not treatment of his Hepatitis C. (UMF No. 22.) Indeed, Plaintiff did not receive or require specific treatment for Hepatitis C during the course of his hospitalization. Instead, during that time, Plaintiff underwent evaluation of his left kidney function and was discharged back to custody following double-J stent placement on September 4, 2007, to relieve hydronephrosis seen in his left kidney on imaging studies. (UMF Nos. 23-24.)

To the extent Plaintiff seeks to impose Eighth Amendment liability against Defendant Martinez for failure to detect and treat his kidney condition, he may not do so. Plaintiff's main argument is that Dr. Martinez should have made the diagnosis for which plaintiff was later admitted. Missing a diagnosis, if indeed that is what occurred, is not deliberate indifference. A claim that a physician has been negligent or even grossly negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Estelle, 429 U.S. at 106; Anderson, 45 F.3d at 1316; Wood, 900 F.2d at 1334 (plaintiff must establish more than mere negligence or isolated occurrence of neglect; mere malpractice or gross negligence does not suffice).

Based on the above, the Court finds that Plaintiff has failed to raise a genuine dispute of material fact that Defendant Martinez disregarded an excessive risk to Plaintiff's health on August 30, 2007 or that Defendant Martinez failed to respond to Plaintiff's medical needs. Farmer, 511 U.S. at 837; Jett, 439 F.3d at 1096. Given this determination, the Court finds it unnecessary to address Defendant Martinez's remaining argument that nothing he did or did not do caused Plaintiff harm. Jett, 439 F.3d at 1096 (deliberate indifference is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.)

/////
/////
/////
/////
/////

### E.  Conclusion and Order

Based on the above, IT IS HEREBY ORDERED as follows:

1. Defendant Martinez's motion for summary judgment, filed on August 3, 2012, is GRANTED;
2. The Clerk of the Court is directed to enter judgment in favor of Defendant Martinez <u>only</u> and against Plaintiff; and
3. This action shall proceed on Plaintiff's claim against Defendants Moonga and Akanno for deliberate indifference to serious medical needs in violation of the Eighth Amendment.

IT IS SO ORDERED.

Dated:   **September 20, 2013**                     /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE